IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

PAUL DOUGLAS KELLY,                    )
                    Plaintiff,         )
                                       )
v.                                     )              7:05-CV-031-R
                                       )
GARY JOHNSON, *et al.*,                )
                    Defendants.        )


<u>MEMORANDUM OPINION AND ORDER</u>

Came on this day to be considered Defendants' Motion for Summary Judgment, Plaintiff's

response thereto and Plaintiff's Motion for Summary Judgment, and the Court finds and orders as

follows:

This is an action brought pursuant to 42 U.S.C. § 1983 by an inmate confined in the Allred

Unit of the Texas Department of Criminal Justice ("TDCJ") in Iowa Park, Texas.  Defendants are

TDCJ employees and medical care providers.

Plaintiff claims that he has been denied proper medical care and denied proper

accommodations for his medical condition.  *See Memorandum with Brief in Support, filed on*

*February 4, 2005.*  He seeks monetary damages and injunctive relief.  *Amended Complaint ¶ VI.*

In order to state a colorable claim for the denial of medical care under the Eighth

Amendment, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate

indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292

(1976).  "Deliberate indifference" under the Eighth Amendment occurs only where a prison official

subjectively knows of and disregards a substantial risk to the inmate's health or safety.  *Farmer v.*

*Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d

633, 650 (5th Cir. 1996). However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo*, 457 U.S. 307, 322-23, 102 S.Ct. 2452, 2461-62 (1982). A disagreement over the appropriate medical treatment constitutes, at most, a possible claim of medical malpractice appropriately addressed under state law. *E.g., Estelle v. Gamble*, 429 U.S. at 107-08, 97 S.Ct. at 293; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Defendants seek summary judgment based on their claim to qualified immunity from suit. Government officials are entitled to qualified immunity from suit when performing discretionary functions unless their conduct violated statutory or constitutional rights, clearly established at the time of the alleged incident, of which a reasonable person would have known. *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995). The question of qualified immunity should be resolved at the earliest possible stage of litigation because it involves an entitlement to immunity from suit. *Hunter v. Bryant*, 502 U.S. 224, 226, 112 S.Ct. 534, 536 (1991); *accord Gibson*, 44 F.3d at 277. The first step in evaluating a government official's entitlement to a defense of qualified immunity is to determine both what the current applicable law is and whether it was clearly established at the time of the events giving rise to the lawsuit. *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995)(citing *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793 (1991)). If the plaintiff has stated a violation of a constitutional right which was clearly established at the time, the court should then determine whether a reasonable official would have understood that his or her conduct violated that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987).

Plaintiff claims that, for approximately seven weeks of confinement in close custody on the Clements Unit, he was required to bend down and place his hands through the food slot in his cell door to be handcuffed which caused him pain and aggravated his prior back injury. *Plaintiff's Memorandum with Brief in Support pp. 2-3 (hereinafter "Plaintiff's Memorandum p. ____.")*. In September of 2003, Plaintiff was transferred to the Montford Unit where he was given a pass to be handcuffed in front rather than behind his back. *Id. p. 3.* Kelly alleges that he was later admitted to the "Pamio" program at the Clements Unit where he was again required to be handcuffed behind his back and he was not allowed to use a cane, crutch or any other walking aide. *Id.* Plaintiff states that he was told that he had two collapsed disks in his back and that injections and nerve tests were recommended. *Id.* However, he states that he was given pain medication by Defendant Reville and released three days later without having any tests conducted. *Id.* Kelly claims that Reville thereafter cancelled his use of the handicapped shower and his walking cane for no apparent reason. *Id.* Plaintiff was later transferred to the Allred Unit where he claims that his bottom row housing restriction was removed and he was forced to climb stairs to get to his assigned cell which was on the third floor. *Id. p. 4.* Plaintiff claims that he repeatedly sought changes in his medical restrictions but that his complaints were ignored by prison officials.

The summary judgment evidence submitted by Defendants reflects that Kelly has a history of mild chronic epididymitis, hemorrhoids, benign prostatic hypertrophy, hypertension, hyperlipidemia, hydroceole, gastro-esophageal reflux disease, depressive disorder, degenerative disc disease with lumbar spinal sterosis, coccydynia and plantar fascitis. *Defendants' Motion for Summary Judgment, Exhibit C at pp.5-6 (hereinafter "Defendants' Exhibit ___ at p. ___").* On July 28, 2003, Kelly had the following medical restrictions in place: (1) lower bunk assignment, (2)

ground floor only row assignment, (3) limited standing, (4) no walking more than 500 yards, (5) no lifting more than 30 lbs., (6) no squatting, and (7) no walking on wet uneven surfaces. *Defendants' Exhibit B at p.1.* On September 2, 2003, Plaintiff's medical restrictions were updated to include (1) no work in direct sunlight, (2) no temperature extremes, (3) no humidity extremes, and (4) individualized treatment plan requiring a psychological representative. *Defendants' Exhibit B at p.2.* On September 23, 2003, Kelly had a hydroceolectomy after which he received a front cuff pass for thirty days beginning on October 1, 2003. *Defendants' Exhibit C at p. 3.* On November 11, 2003, Plaintiff was referred to the Program for the Aggressive Mentally Ill Offender ("PAMIO") due to his history of aggressive and assaultive behavior. *Defendants' Exhibit A at pp. 5-6.* At the time of his admission into PAMIO, Kelly had received disciplinary cases for both a staff assault and an inmate assault. *Defendants' Exhibit A at p. 5; Exhibit B at p. 5; Exhibit C at pp. 1-2.* Kelly had numerous examinations for his physical and mental health. On December 31, 2003, he had a series of x-rays of his lumbar spine. *Defendants' Exhibit C at p. 4.* The degenerative changes observed were most severe at L4-5 and L2-3. *Id.* On April 21, 2004, Kelly had a consultation with a neurosurgeon, Dr. Mark Maxwell. *Defendants' Exhibit A at pp. 7-8; Exhibit C at p. 4.* An MRI reflected moderate degenerative changes and some fairly extensive degenerative changes throughout Kelly's lumbar spine. *Defendants' Exhibit A at p. 7.* Dr. Maxwell's impression was that Kelly had chronic lumbosacral spasm. *Id.* Although there was evidence of chronic changes, potentially from his prior injury and surgery, Dr. Maxwell did not see anything acute to focus on. *Id. at pp. 7-8.* Maxwell believed that Kelly would probably benefit from SI joint and piriformis injections as well as gluteal injections. *Id.* Additionally, Maxwell felt that Kelly needed to be trained to do his own daily stretching exercises to limit the amount of spasm long term. *Id. at p. 8.* Dr. Maxwell did not

recommend surgery at that time. *Id.*  On July 16, 2004, Kelly received another front cuff pass for

six weeks due to chronic back pain.  *Defendants' Exhibit C at p. 3.*  On October 25, 2005, Kelly's

medical restrictions consisted of (1) lower bunk assignment, (2) ground floor only row assignment,

(3) medically unassigned work assignment, and (4) no temperature extremes.  *Defendants' Exhibit*

*B at p. 4.*

      The evidence further reflects that Plaintiff was seen by medical personnel numerous times

for evaluation and treatment with regard to a variety of complaints.  *Defendants' Exhibit A at pp.*

*1-81.*  The medical records show that Kelly was repeatedly examined and prescribed medications

to treat his ailments.  *Id.*  The summary judgment evidence clearly reflects that Plaintiff was not

denied medical care.  Rather, Plaintiff's complaint challenges, at best, the nature of the medical care

provided to him rather than any lack thereof.  Plaintiff clearly states that he "Has NOT CLAIMED

that he was DENIED MEDICAL TREATMENT, But that he was DENIED PROPER MEDICAL

TREATMENT, or the LACK THEREOF."  *Plaintiff's Motion for Summary Judgment p. 2.*  While

Plaintiff may disagree with the nature of the various assessments of his medical condition and the

resulting medical restrictions, such disagreements are insufficient to state a claim under § 1983.

      Summary judgment is proper when the pleadings and evidence illustrate that no genuine

issue exists as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991).  Disputes

concerning material facts are genuine if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th

Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,

2510 (1986)).  Substantive law provides that an issue is "material" if it involves a fact that might

affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Celotex*, 477 U.S. at 322-24, 106 S.Ct. at 2552-53; *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden," *Douglass*, 79 F.3d at 1429, as "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2510-11. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies

are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, "the [Court's] function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. The movant's motion for summary judgment will be granted if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56(c); *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1119 (5th Cir. 1992).

The summary judgment evidence presented in this case establishes that there are no genuine issues of material fact with regard to Defendants' defense of qualified immunity. Therefore, Defendants are entitled to summary judgment as a matter of law.

For the foregoing reasons, Defendants' Motion for Summary Judgment on the issue of qualified immunity is GRANTED and Plaintiff's complaint is hereby dismissed with prejudice.

A copy of this order shall be transmitted to Plaintiff and to Counsel for Defendants.

SO ORDERED this 27th day of March, 2007.

JERRY BUCHMEYER
UNITED STATES DISTRICT JUDGE

-7-